**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

**SEATTLE DIVISION**

| | |
|---|---|
| ESTEBAN IBARRA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NAVIA BENEFIT SOLUTIONS, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Esteban Ibarra, individually and on behalf of all others similarly situated, ("Plaintiff") brings this Action against Navia Benefit Solutions, Inc. (or "NAVIA" or "Defendant"). Plaintiff's allegations are based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth, after a reasonable opportunity for discovery.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

**INTRODUCTION**

1. The release, disclosure, and publication of sensitive, private data can be devastating. It is not only an intrusion of privacy and a loss of control, but also a harbinger of identity theft. For victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach. With the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, collect government benefits, or secure driver's licenses in the victims' names. Data breaches force victims to maintain constant vigilance over the misuse of their information.

2. Plaintiff brings this class action individually and on behalf of all other individuals who had their sensitive personally identifying information, including but not limited to names and Social Security numbers (SSN) (collectively, "PII" or "Personal Information"), disclosed to unauthorized third parties during a data breach experienced by Navia in or around December 2025.

3. Navia Benefit Solutions, Inc. ("Navia") is a benefits administration service provider.[2]

4. On January 23, 2026, Navia discovered a network security incident that impacted its system. After further investigation, Defendant discovered unauthorized access to its network as early as December 22, 2025 until January 15, 2026. For the state of Washington alone, this included "Navia records going back seven years (to 2018), affecting almost 27,000 current and former PEBB members, about 5,600 current and former SEBB members, and almost 3,000 current and former participants in the Compact of Free Association (COFA) Islander program. Impacts may also include some PEBB and SEBB members who never enrolled in a Flexible Spending Arrangement (FSA) or Dependent Care Assistance Program (DCAP) because of eligibility data exchanges that

---

[1] Dave Maxfield & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall*, S.C. LAWYER (May 2014).

[2] Navia, *About Us,* https://www.naviabenefits.com/about/ (last visited Mar. 19, 2026).



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

allow members to elect these benefits during the annual open enrollment." (the "Data Breach").[3] Navia's disclosure to the Maine Attorney General's website detailed that the breach affected 2,697,540 persons nationwide.[4]

5. Little information has been made available by Navia about the Data Breach. The details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again have not been shared with Plaintiff and Class Members, who retain a vested interest in ensuring that their Personal Information remains protected.

6. Defendant was aware of or should have known of its data security shortcomings. It collects and maintains sensitive Personal Information about its customers, including SSNs and financial information. It requires customers to provide this highly confidential information in connection with using Navia's products and services

7. Despite knowing how valuable customer information is and the damage that would result from its release, Defendant failed to adequately protect Plaintiff's and Class Members' PII. This PII was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect customers' sensitive data.

8. Hackers targeted and obtained Plaintiff's and Class Members' PII because it empowers criminals to exploit and steal the identities of Plaintiff and Class Members. The present and continuing risk to victims of the Data Breach, including Plaintiff and Class Members, will remain for their respective lifetimes.

9. Defendant's failures to ensure that its servers and systems were adequately secure fell far short of its obligations and Plaintiff's and Class Members' reasonable expectations for data

---

[3] Navia Benefit Solutions, *Notice of Data Security Event,* https://pebb.naviabenefits.com/notice-of-data-security-event/ (last accessed March 19, 2026).

[4] *See* https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/584caa6c-4397-49c0-89a5-dbc0dbea0948.html (last accessed March 19, 2026)



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

privacy, jeopardized the security of Plaintiff's and Class Members' Personal Information, and exposed Plaintiff and Class Members to fraud and identity theft or the serious risk of fraud and identity theft.

10. As a result of Defendant's conduct and the resulting Data Breach, Plaintiff and Class Members' privacy has been invaded, their Personal Information is now in the hands of criminals, they have either suffered fraud or identity theft or face the substantial and continuing risk of identity theft and fraud. Accordingly, these individuals now must take immediate and time-consuming action to protect themselves from such identity theft and fraud.

11. Plaintiff brings this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Personal Information that it collected and maintained.

## PARTIES

12. Plaintiff Esteban Ibarra is an adult citizen of the State of California, and resides in Fresno, California. Plaintiff was notified by LinkedIn on or about March 18, 2026 that Navia had a Data Breach affecting employees. Plaintiff worked for Navia from January 2019 until May 2023. He then learned that his Personal Information was accessed and/or acquired by unauthorized third parties in the Data Breach.

13. As a result of the Data Breach, Plaintiff has had to monitor his accounts and anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the harms caused by the Data Breach. He has never before experienced any identity theft or related issues.

14. Plaintiff has also experienced an increase in fear, stress, and anxiety. He is fearful of identity theft and the loss of personal information in his file. Since he received direct deposit payment from his former employer, his checking account information was available to Navia, and he is fearful of cybercriminals taking advantage of this information. He is also taking time to obtain



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

credit freezes and research news coverage about the breach. Even though he only learned about the breach days ago, he has already spent approximately four hours attempting to rectify its effects and will spend many more as he continues these attempts.

15. Since December of 2025, Plaintiff has noticed an increase in fraudulent spam calls of five times the rate of the spam calls he received prior to the breach. He has also noticed an increase in spam texts.

16. As shown by the actual fraud that has occurred and as well document by privacy and cyber experts, as a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come. Plaintiff has a continuing interest in ensuring that his Personal Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

17. Plaintiff is also incredibly careful with his personal information, keeping all his passwords encrypted and rotating to maximize his data security.

18. Navia is a Washington corporation, founded in with its principal place of business located at 707 South Grady Way, Suite 350, Renton, WA, 98057.[5]

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(a) and (d), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of five million dollars ($5,000,000.00), there are in excess of 100 Class Members, the action is a class action in which one or more Class Members are citizens of states different from Defendant, and Defendant is not a government entity.

20. The Court has personal jurisdiction over Defendant because Defendant has a

---

[5] Corporations and Charities Filing System, *Navia Benefit Solutions, Inc.*, https://ccfs.sos.wa.gov/?_gl=1*17wbsyk*_ga*MTcxMjkyMjg5MS4xNzczOTQzMTY2*_ga_7B08VE04WV*czE3NzM5NTYxNDEkbzEkZzEkdDE3NzM5NTYxNTMkajQ4JGwwJGgw*_ga_X6SDF160YQ*czE3NzM5NTYxNDEkbzEkZzEkdDE3NzM5NTYxNTMkajQ4JGwwJGgw#/BusinessSearch/BusinessInformation (last visited Mar. 19, 2026).



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

principal office in Renton, Washington, operates in Washington, conducts other significant business in Washington, and otherwise has sufficient minimum contacts with and intentionally avails itself of the markets in Washington.

21. Venue properly lies in this judicial district because, inter alia, Defendant has a principal place of business in this district; Defendant transacts substantial business, has agents, and is otherwise located in this district; and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

### A. Navia Collects and Stores Personal Information

22. Navia is a third-party administrator that specializes in employee benefits services. It routinely collects highly sensitive Personal Information in the process of providing its products and services.

23. Defendant is and was aware of the sensitive nature of the Personal Information it collects, and it acknowledges the importance of data privacy. It makes the following promises and claims about its service quality and reliability on its website, such as claiming to provide "measurable and unparalleled customer satisfaction" and that "[r]espect, communication, transparency, and partnership mean everything to us."[6] However, Navia broke these promises when failing to protect the data it was entrusted by its clients to safeguard as required by law.

### B. The Data Breach

24. On or about January 23, 2025, Navia detected unauthorized activity on its systems.

25. According to its own website, Navia activated its cybersecurity response protocols, engaged cybersecurity experts to investigate, contain, and remediate the incident, and implemented enhanced security measures. It also notified law enforcement authorities.[7]

26. Navia's investigation has revealed evidence that an unauthorized party obtained

[6] Navia, *A simple and amazing benefit experience*, https://pebb.naviabenefits.com/about/.

[7] Navia, *Notice of Data Security Event,* https://pebb.naviabenefits.com/notice-of-data-security-event/ (last visited Mar. 19, 2026).



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

confidential, proprietary, and personal information, including SSNs, through unauthorized queries on databases storing customer and applicant data. On information from its own website posting, and given the nature of Navia's business, the compromised data likely includes names, contact information, SSNs, birthdates, and physical addresses.[8]

27. The Personal Information stolen in the breach necessarily places affected individuals at heightened risk of identity theft, phishing attacks, and financial fraud.

28. To date, Navia has failed to take adequate steps to protect individuals affected by the Data Breach, instead putting the burden on Plaintiff and Class Members to take action to mitigate their damages. For example, on the incident FAQs page, Navia tasks consumers with monitoring accounts for unauthorize activity and making time-consuming phone calls in the event of a concern, stating, "We encourage everyone affected to watch for signs of identity theft and fraud by reviewing account statement and monitoring free credit reports for suspicious activity errors."[9]

**C. <u>Impact of the Data Breach</u>**

29. As a result of the Data Breach, Plaintiff and Class Members had their most sensitive Personal Information accessed and acquired by cybercriminals, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, the value of their time reasonably incurred to remedy or mitigate the effects of the attack, and unauthorized use of their Personal Information.

30. The actual extent, scope, and impact of the Data Breach remains uncertain. Unfortunately for Plaintiff and Class Members, the damage is already done because their sensitive Personal Information has been disclosed to unauthorized persons during the Data Breach.

31. Navia knew or should have known that its affected systems and/or servers are unsecure and do not meet industry standards for protecting highly sensitive customer Personal Information. On information and belief, Navia failed to timely make changes to its data security

---

[8] *Id.*

[9] *Id.*



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

systems, privacy policies, and its IT systems and servers, exposing its customers' Personal Information to the risk of theft, identity theft, and fraud.

32. The Data Breach creates a heightened security concern for Plaintiff and Class Members because their SSNs, and likely their financial information and other sensitive information, was potentially disclosed. Theft of SSNs creates a particularly alarming situation for victims because those numbers cannot easily be replaced. To obtain a new number, a breach victim must demonstrate ongoing harm from misuse of his or his SSN, and a new SSN will not be provided until after the harm has already been suffered by the victim.

33. Given the highly sensitive nature of SSNs, theft of SSNs in combination with other personally identifying information (e.g., name, address, date of birth) is akin to having a master key to the gates of fraudulent activity. Per the United States Attorney General, SSNs "can be an identity thief's most valuable piece of consumer information."[10] TIME quotes data security researcher Jim Stickley, who is employed by companies to find flaws in their computer systems, as stating, "If I have your name and your Social Security number and you don't have a credit freeze yet, you're easy pickings."[11]

34. Navia had a duty to keep Plaintiff's and Class Members' Personal Information confidential and to protect it from unauthorized disclosures. Plaintiff and Class Members provided their Personal Information to Navia with the understanding that Navia would comply with its privacy policies and protocols, the values it espouses regarding transparency.[12]

35. Defendant's data security obligations were particularly important given the substantial increase in data breaches in recent years, which are widely known to the public and to anyone in Navia's industry.

---

[10] *Fact Sheet: The Work of the President's Identity Theft Task Force*, DEP'T OF JUSTICE, (Sept. 19, 2006), https://www.justice.gov/archive/opa/pr/2006/September/06_ag_636.html.

[11] Patrick Lucas Austin, *'It Is Absurd.' Data Breaches Show it's Time to Rethink How We Use Social Security Numbers, Experts Say*, TIME (Aug. 5, 2019), https://time.com/5643643/capital-one-equifaxdata-breach-social-security/.

[12] Navia, *A simple and amazing benefit experience*, https://pebb.naviabenefits.com/about/.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

**D. Theft of Personal Information Has Serious Consequences for Victims**

36. Hostile attacks to obtain data are by no means new, and they should not be unexpected by business that collect and monetize consumer data.

37. Business Insider has noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers. . . . Many of them were caused by flaws in . . . systems either online or in stores."[13] It is well known amongst companies that store sensitive personally identifying information that sensitive Personal Information—like SSNs, financial information, tax information, etc.—is valuable and frequently targeted by criminals.

38. These types of attacks should be anticipated by companies that store sensitive PII, like Navia, and these companies must ensure that data privacy and security practices and protocols are adequate to protect against and prevent known and expected attacks.

39. Theft of Personal Information is serious. The Federal Trade Commission (FTC) has warned consumers that identity thieves use Personal Information to exhaust financial accounts, receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[14]

40. Indeed, with access to an individual's Personal Information, criminals can do more than simply empty a victim's bank account. They can also commit all manner of fraud, including: obtain a driver's license or official identification card in the victim's name but with the thief's picture; use the victim's name and SSN to obtain government benefits; obtain lending or lines of credit; or file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house, or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest, resulting in

---

[13] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUSINESS INSIDER (Nov. 19, 2019), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[14] See Federal Trade Commission, *What to Know About Identity Theft*, FED. TRADE COMM'N CONSUMER ADVICE, https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last visited Oct. 22, 2025).



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

an arrest warrant being issued in the victim's name.[15]

41. According to Experian, one of the largest credit reporting companies in the world, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[16]

42. Personal Information is a valuable property right.[17] The value of sensitive Personal Information as a commodity is measurable.[18] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[19]

43. Personal Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web and the "cyber black-market" for years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen SSNs, financial information, driver's license numbers, and other Personal Information directly on various illegal websites making the information publicly available, often for a price. This information from various breaches, including the information reportedly exposed in the Data Breach, can be aggregated and become more valuable to thieves and

---

[15] See Federal Trade Commission, *Warning Signs of Identity Theft*, FED. TRADE COMM'N CONSUMER ADVICE, https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last visited Aug. 22, 2025).

[16] See Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-canidentity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[17] *See* Marc van Lieshout, *The Value of Personal Data,* 457 INTERNATIONAL FEDERATION FOR INFORMATION PROCESSING 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[18] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market,* MEDSCAPE.COM (Apr. 28, 2014), http://www.medscape.com/viewarticle/824192.

[19] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD DIGITAL ECONOMY PAPERS, NO. 220 at 4 (Apr. 2, 2013), https://www.oecdilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

more damaging to victims.

44. Identity theft victims are frequently required to spend many hours and large amounts of money repairing the impact to their credit. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, tax fraud, phone or utilities fraud, and bank/finance fraud.

45. Consumers place a high value on the privacy of sensitive data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[20]

46. There may be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[21]

47. Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' Personal Information has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

48. Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that most victims of identity crimes need more than a month to resolve issues stemming from identity theft and some need over a year.[22]

49. It is within this context that Plaintiff and all other Class Members must now live with the knowledge that their Personal Information is forever in cyberspace and was taken by people willing to use the information for any number of improper purposes and scams, including making

---

[20] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study*, 22(2) INFORMATION SYSTEMS RESEARCH 254 (June 2011), https://www.jstor.org/stable/23015560?seq=1.

[21] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 JOURNAL OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

[22] Identity Theft Resource Center, 2021 Consumer Aftermath Report, IDENTITY THEFT RESOURCE CENTER (2021), https://www.idtheftcenter.org/identity-theft-aftermath-study/.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

the information available for sale on the black-market.

**E. Navia Failed to Act in the Face of a Known Risk of a Data Breach**

50. Despite the known risk of data breaches and the widespread publicity and industry alerts regarding other notable (similar) data breaches, Defendant failed to take reasonable steps to adequately protect Personal Information, leaving its clients (and potentially others) exposed to risk of fraud and identity theft.

51. Navia is, and at all relevant times has been, aware that the sensitive Personal Information it handles and stores in connection with providing software services and products is highly sensitive. As a company that requires consumers to provide highly sensitive and identifying information, Navia is aware of the importance of safeguarding that information and protecting its systems and products from security vulnerabilities.

52. Navia was aware, or should have been aware, of regulatory and industry guidance regarding data security, and was alerted to the risk associated with failing to ensure that Personal Information was adequately secured.

53. Despite the well-known risks of hackers and cybersecurity intrusions, Defendant failed to employ adequate data security measures in a meaningful way in order to prevent breaches, including the Data Breach.

54. The security flaws inherent to Defendant's IT systems or servers run afoul of industry best practices and standards. Had Defendant adequately protected and secured its servers or systems, and the sensitive Personal Information stored therein, it could have prevented the Data Breach.

55. Despite the fact that Navia was on notice of the very real possibility of data theft, including through a prior data breach, it still failed to make necessary changes, and permitted a massive intrusion to occur that resulted in disclosure of Plaintiff's and over 17 million other Class Members' Personal Information to criminals.

56. Defendant permitted Class Members' Personal Information to be compromised and disclosed to criminals by failing to take reasonable steps against an obvious threat.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

57. Industry experts are clear that a data breach is indicative of data security failures. Indeed, industry-leading research and advisory firm Aite Group has identified that: "If your data was stolen through a data breach that means you were somewhere out of compliance" with payment industry data security standards.[23]

58. As a result of the events detailed herein, Plaintiff and Class Members suffered harm and loss of privacy, and will continue to suffer future harm, resulting from the Data Breach, including, but not limited to: invasion of privacy; loss of privacy; loss of control over personal information and identities; fraud and identity theft; unreimbursed losses relating to fraud and identity theft; loss of value and loss of possession and privacy of Personal Information; harm resulting from damaged credit scores and information; loss of time and money preparing for and resolving fraud and identity theft; loss of time and money obtaining protections against future identity theft; and other harm resulting from the unauthorized use or threat of unauthorized exposure of Personal Information.

59. Victims of the Data Breach have likely already experienced harms and are subject to a substantial and ongoing risk of harm, including identity theft and fraud.

60. As a result of Navia's failure to ensure that its impacted systems and servers were protected and secured, the Data Breach occurred. As a result of the Data Breach, Plaintiff's and Class Members' privacy has been invaded, their Personal Information is now in the hands of criminals, they face a substantially increased risk of identity theft and fraud, and they must take immediate and time consuming action to protect themselves from such identity theft and fraud.

## CLASS ALLEGATIONS

61. Plaintiff brings this action individually and on behalf of the following Classes pursuant to Federal Rule of Civil Procedure 23(a) and (b):

> **Nationwide Class**
> All residents of the United States who were impacted by the Data Breach, including all persons who were sent notice by Defendant

---

[23] Lisa Baertlein, *Chipotle Says Hackers Hit Most Restaurants in Data Breach*, REUTERS (May 30, 2017), https://www.reuters.com/article/idUSKBN18M2BY/.



COTCHETT, PITRE & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

> that their Personal Information was compromised as a result of the Data Breach.
>
> **<u>California Subclass</u>**
>
> All residents of California who were impacted by the Data Breach, including all persons who were sent notice by Defendant that their Personal Information was compromised as a result of the Data Breach.

62. The above-defined classes are referred to hereafter as the "Class" or "Classes." Excluded from the Class are: (1) any Judge presiding over this action, members of their immediate families, and court staff; and (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant, or its parents, have a controlling interest, and its current or former officers and directors.

63. **<u>Numerosity</u>**: While the precise number of Class Members has not yet been determined, members of the Class are so numerous that their individual joinder is impracticable, as the proposed Class is reported to include over 17 million members who are geographically dispersed.

64. **<u>Typicality</u>**: Plaintiff's claims are typical of Class Members' claims. Plaintiff and all Class Members were injured through Defendant's uniform misconduct, and Plaintiff's claims are identical to the claims of the Class Members they seek to represent. Accordingly, Plaintiff's claims are typical of Class Members' claims.

65. **<u>Adequacy</u>**: Plaintiff's interests are aligned with the Class Plaintiff seeks to represent, and Plaintiff has retained counsel with significant experience prosecuting complex class action cases, including cases involving alleged privacy and data security violations. Plaintiff and undersigned counsel intend to prosecute this action vigorously. The Class's interests are well represented by Plaintiff and undersigned counsel.

66. **<u>Superiority</u>**: A class action is the superior—and only realistic—mechanism to fairly and efficiently adjudicate Plaintiff's and other Class Member's claims. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult if not impossible for



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

Class Members individually to effectively redress Defendant's wrongdoing. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

67. **Commonality and Predominance**: The following questions common to all Class Members predominate over any potential questions affecting individual Class Members:

- whether Defendant engaged in the wrongful conduct alleged herein;
- whether Defendant's data security practices resulted in the disclosure of Plaintiff's and other Class Members' Personal Information and the Data Breach;
- whether Defendant violated privacy rights and invaded Plaintiff's and Class Members' privacy; and
- whether Plaintiff and Class Members are entitled to damages, equitable relief, or other relief and, if so, in what amount.

68. Given that Defendant engaged in a common course of conduct as to Plaintiff and the Class, similar or identical injuries and common law and statutory violations are involved, and common questions outweigh any potential individual questions.

69. **Injunctive and Declaratory Relief**: Consistent with Fed. R. Civ. P. 23(b)(2), Defendant, through its conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiff and the Nationwide Class or, Alternatively, the California Subclass)

70. Plaintiff realleges and incorporates paragraphs 1-69 as though fully set forth herein

71. Defendant was entrusted with, stored, and otherwise had access to the Personal Information of Plaintiff and Class Members.

72. Defendant knew, or should have known, of the risks inherent to storing the Personal Information of Plaintiff and Class Members, and to not ensuring that its servers and systems, and the Personal Information, was secure. These risks were reasonably foreseeable to Defendant, including because Defendant has previously experienced a data breach.

73. Defendant owed duties of care to Plaintiff and Class Members whose Personal Information had been entrusted to it.

74. Defendant breached its duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate data security. Defendant had a duty to safeguard Plaintiff's and Class Members' Personal Information and to ensure that it adequately protected Personal Information. Defendant breached this duty.

75. Navia's duty of care arises from its knowledge that its customers entrust it with the highly sensitive Personal Information that Navia is required to handle securely.

76. Only Navia was positioned to ensure that its systems, servers, and services were sufficient to protect against breaches and the harms that Plaintiff and Class Members have now suffered.

77. A "special relationship" exists between Defendant, on the one hand, and Plaintiff and Class Members, on the other hand. Defendant entered a "special relationship" with Plaintiff and Class members by agreeing to accept, store, and have access to the sensitive Personal Information provided by Plaintiff and Class Members in connection with obtaining or utilizing Navia's services.



COTCHETT, PITRE & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

78. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

79. Defendant acted with wanton disregard for the security of Plaintiff's and Class Members' Personal Information.

80. The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of Defendant's breach of duties. Defendant knew or should have known it was failing to meet these duties, and that Defendant's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their Personal Information.

81. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have been harmed and face a substantial and continuing risk of harm.

82. As a direct and proximate result of Defendant's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II
## BREACH OF IMPLIED CONTRACT
## (On behalf of Plaintiff and the Nationwide Class or, Alternatively, the California Subclass)

83. Plaintiff realleges and incorporates paragraphs 1-69 as though fully set forth herein.

84. Navia provided or provides services, and Plaintiff and Class Members provided their Personal Information to Navia as customers utilizing those services, or in otherwise transacting with Defendant.

85. In connection with their business relationship, Plaintiff and Class Members entered into implied contracts with Navia.

86. Pursuant to these implied contracts, Plaintiff and Class Members provided Navia with their Personal Information. In exchange, Navia agreed, among other things, to: (1) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class Members' Personal Information; and (2) protect Plaintiff's and Class Members' Personal Information in compliance with federal and state laws and regulations and industry standards.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

87. The protection of Personal Information was a material term of the implied contracts between Plaintiff and Class Members, on the one hand, and Navia, on the other hand. Had Plaintiff and Class Members known that Navia would not adequately protect its customers' Personal Information, they would not have done business with Navia and utilized its services.

88. Plaintiff and Class Members performed their obligations under the implied contract when they provided Navia with their Personal Information.

89. Necessarily implicit in the agreements between Plaintiff/Class Members and Defendant was Navia's obligation to take reasonable steps to secure and safeguard Plaintiff's and Class Members' Personal Information.

90. Defendant breached its obligations under its implied contracts with Plaintiff and Class Members by failing to implement and maintain reasonable security measures to protect their Personal Information.

91. Defendant's breach of its obligations of its implied contracts with Plaintiff and Class Members directly resulted in the Data Breach.

92. The damages sustained by Plaintiff and Class Members as described above were the direct and proximate result of Defendant's material breaches of its agreements.

93. Plaintiff and other Class Members were damaged by Defendant's breach of implied contracts because: (i) they have suffered actual harm or identity theft; (ii) they face a substantially increased risk of identity theft—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (iii) their Personal Information was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their Personal Information has been breached; (v) they were deprived of the value of their Personal Information, for which there is a well-established national and international market; (vi) they were deprived of the benefit of their bargain; and/or (vii) they lost time and money incurred to mitigate and remediate the effects of the breach, including the increased risks of identity theft they face and will continue to face.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

**COUNT III**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Nationwide Class or, Alternatively, the California Subclass)**

94. Plaintiff realleges and incorporates paragraphs 1-69 as though fully set forth herein.

95. This claim is pleaded in the alternative to the implied contract claim.

96. Navia has profited and benefited from the monies or fees paid and the Personal Information provided by Plaintiff and Class Members to receive services and benefits from Navia.

97. Navia has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of the misconduct and omissions described herein, Plaintiff and Class Members did not receive services of the quality, nature, fitness, or value represented by Navia and that reasonable consumers expected.

98. Navia has been unjustly enriched by its withholding of and retention of these benefits, at the expense of Plaintiff and Class Members.

99. Equity and justice militate against permitting Navia to retain these profits and benefits.

100. Plaintiff and Class Members suffered injury as a direct and proximate result of Navia's unjust enrichment and seek an order directing Navia to disgorge these benefits and pay restitution to Plaintiff and Class Members.

**COUNT IV**
**DECLATORY JUDGMENT**
**(On behalf of Plaintiff and the Nationwide Class)**

101. Plaintiff incorporates paragraphs 1-69 as if fully set forth herein.

102. Plaintiff and the Class have stated claims against Defendant based on negligence, breach of implied contracts and unjust enrichment.

103. Defendant failed to fulfill its obligations to provide adequate and reasonable security measures for the PII of Plaintiff and the Class, as evidenced by the Data Breach.

104. As a result of the Data Breach, Defendant's systems are more vulnerable to



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

unauthorized access and require more stringent measures to be taken to safeguard the PII of Plaintiff and the Class going forward.

105. Plaintiff seeks a declaration that Defendant must implement specific additional, prudent industry security practices to provide reasonable protection and security to the PII of Plaintiff and the Class. Specifically, Plaintiff and the Class seek a declaration that Defendant's existing security measures do not comply with their obligations, and that Defendant must implement and maintain reasonable security measures on behalf of Plaintiff and the Class to comply with their data security obligations.

**COUNT V**
**CALIFORNIA CONSUMER PRIVACY ACT ("CCPA")**
**CAL. CIV. CODE SECTION 1798.150, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

106. Plaintiff incorporates paragraphs 1-69 as if fully set forth herein.

107. Plaintiff brings this claim individually and on behalf of members of the California Subclass.

108. Defendant is a corporation organized or operated for the profit or financial benefit of its owners.

109. Defendant collected consumers' Personal Information as defined in Cal. Civ. Code § 1798.140.

110. By failing to protect Plaintiff and California Subclass Members' PII from theft, exfiltration, or unauthorized disclosure, Defendant breached its duties to ensure adequate data security practices and violated § 1798.150 of the CCPA.

111. Defendant has a duty to implement and maintain reasonable security measures to protect Plaintiff and California Subclass Members' PII. Defendant failed to do so.

112. Defendant's actions directly and proximately caused Plaintiff and California Subclass Members' Private Information, including actual names, usernames, emails, other contact information, payment information, and SSNs to be exfiltrated, stolen, disclosed, or subjected to


COTCHETT, PITRE & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

unauthorized access.

113. Plaintiff and California Subclass Members seek equitable relief to ensure Defendant sufficiently secures customers' Private Information by implementing sufficient data security procedures and practices. Defendant continues to hold customers' PII. Plaintiff and California Subclass Members have an interest in ensuring that their PII is reasonably protected, and Defendant has demonstrated its inability to sufficiently safeguard their information through the Data Breach.

114. An actual controversy now exists as to whether Defendant has implemented and maintained adequate security procedures and practices under the CCPA, in relation to the nature of the information.

115. Judicial intervention on this issue is necessary and appropriate under the circumstances to prevent further data breaches of Plaintiff and California Subclass Members' PII.

116. Plaintiff and California Subclass Members seek statutory damages or actual damages, including actual financial losses that are a result of the unlawful data breach.

**COUNT VI**
**CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**
**BUSINESS & PROFESSIONS CODE SECTION 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclass)**

117. Plaintiff incorporates paragraphs 1-69 as if fully set forth herein.

118. Plaintiff brings this claim on behalf of herself and members of the California Subclass.

119. Defendant is a "person" under the UCL, Cal. Bus. & Prof. Code § 17201.

120. Defendant violated the UCL through its unfair and unlawful business practices.

121. Under California's UCL, Cal. Bus. & Prof. Code Section 17200, et seq., a business practice is "unfair" when any injury it causes outweighs any benefits provided to consumers and the injury is one that consumers themselves could not reasonably have avoided. Camacho v. Auto Club of Southern California, 142 Cal. App. 4th 1394, 1403 (2006).

122. Defendant's failures to implement and maintain adequate security measures do not



COTCHETT, PITRE & McCARTHY, LLP
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

benefit consumers. Defendant implemented insufficient, ineffective, and cheap security measures. Defendant diverted the funds necessary to ensure sufficient data security to its own profits, which lead to the Data Breach. Defendant did not follow necessary protocols, policies, and procedures necessary for security and encryption in line with industry standards and requirements. Defendant concealed and omitted the material fact that they inadequately secured Plaintiff's and Subclass Members' PII. Defendant concealed and omitted the material fact that they did not fulfill their statutory obligations and common law duties for security of Subclass Members' PII.

123. Defendant was deceptive, misleading, and unreasonable, constituting an unfair business practice as interpreted by Cal. Bus. & Prof. Code Section 17200. Defendant's actions, as described herein, have resulted in harm to consumers who paid for Defendant's products and services inconsistent with reasonable expectations of data security.

124. California's UCL finds a business practice is "unlawful" when Defendant breach state or federal law and the "unfair competition law makes [these breaches] independently actionable." Velazquez v. GMAC Mortg. Corp., 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008). Defendant engaged in "unlawful" business practices by violating the FTC Act, 15 U.S.C. § 45, the CCPA, Cal. Civ. Code § 1798.100, and California common law.

125. Defendant's conduct, as alleged herein, is deceptive, misleading, unreasonable, and constitutes unlawful conduct. Defendant's conduct, including misrepresentations and omissions, was material because a regular consumer would be deceived about Defendant's data security standards. Defendant disregarded Plaintiff's and Subclass Members' rights. Defendant maliciously, intentionally, and knowingly violated California's Unfair Competition Law.

126. Defendant's unfair and unlawful conduct directly and proximately caused Plaintiff's and Subclass Members' injuries, including lost money or property. But for Defendant's unfair and unlawful acts, Plaintiff's and Subclass Members' harm would not have occurred, including a substantial and increased risk of identity theft, a diminished value for their personal information, and necessary time and expenses for monitoring fraudulent activity. Due to Defendant's unlawful conduct, as alleged herein, customers who entrusted their Private Information to Defendant have



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

suffered injuries-in-fact as a result of the Data Breach.

127. Defendant's failure to enforce proper security measures violates public policy, which is designed to protect consumers' data and to ensure that organizations entrusted with such data adopt necessary security protocols. These objectives are reflected in laws such as the FTC Act, 15 U.S.C. § 45, and the CCPA, Cal. Civ. Code § 1798.100. Consumers cannot reasonably avoid the injuries that Defendant caused as alleged herein. Victims' injuries outweigh potential benefits to the Defendant. Defendant could have furthered its business interests in a manner other than this unfair conduct.

128. Plaintiff and California Subclass Members seek an order enjoining Defendant from continuing its unlawful, deceptive, and unfair business practices. Plaintiff and California Subclass Members seek an order requiring Defendant to implement and maintain sufficient data security practices in accordance with statutory and common law duties. Plaintiff and California Subclass Members request an award for restitution for the money wrongfully acquired by Defendant's unfair and unlawful practices.

## COUNT VII
## CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT ("CLRA") CAL. CIV. CODE 1750, *et seq.*
## (On Behalf of Plaintiff and the California Subclass)

129. Plaintiff incorporates paragraphs 1-69 as if fully set forth herein.

130. Plaintiff brings this claim on behalf of herself and members of the California Subclass.

131. The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale of goods. Cal. Civ. Code § 1770.

132. Defendant's unlawful conduct described herein was intended to increase sales to the consuming public and violated Section 1770(a)(5), (a)(7), and (a)(9) of the CLRA by representing that the products and services have characteristics and benefits, such as appropriate data security, that they do not have.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

133. Defendant deceived Plaintiff and the California Subclass by representing that its products and services have certain characteristics, benefits, and qualities which they do not have, namely data protection and security. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the California Subclass, specifically by advertising secure services when Defendant in fact failed to institute adequate security measures and neglected system vulnerabilities that led to a data breach. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the California Subclass and depriving them of their legal rights and money.

134. Defendant's claims about the products and services led and continue to lead consumers like Plaintiff and Subclass Members to reasonably believe that Defendant has implemented adequate data security measures when Defendant, in fact, neglected system vulnerabilities that led to a data breach and enabled hackers to access customers' PII.

135. Defendant knew or should have known that adequate security measures were not in place and that consumers' PII was vulnerable to a data breach.

136. Plaintiff and the California Subclass have suffered injury-in-fact as a result of and in reliance upon Defendant's false representations.

137. Plaintiff and the California Subclass would not have purchased the products or used the services or would have paid significantly less for the products and services, had they known that their Personal Information was vulnerable to a data breach.

138. Defendant's actions as described herein were done with conscious disregard of Plaintiff and the rights of California Subclass Members, and Defendant was wanton and malicious in its concealment of the same.

139. Plaintiff and the California Subclass have suffered injury-in-fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff paid for products and services advertised as secure, and consequentially entrusted Defendant with PII, when Defendant, in fact, failed to institute adequate security measures and neglected vulnerabilities that led to a data breach. Plaintiff and the California Subclass would not have



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

purchased the products and services, or would not have provided Defendant with their PII, had they known that their Personal Information was vulnerable to a data breach.

140. Defendant should be compelled to implement adequate security practices to protect customers' PII. Additionally, Plaintiff and the members of the California Subclass lost money as a result of Defendant's unlawful practices.

141. Plaintiff and California Subclass Members seek all monetary and nonmonetary relief allowed by law including restitution; reasonable attorneys' fees and costs under California Code of Civil Procedures § 1021.5; and injunctive relief under the CLRA pursuant to Cal. Civ. Code 1782(d) and other appropriate equitable relief.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of the Class, by and through undersigned counsel, respectfully requests that the Court grant the following relief:

A. Certify this case as a class action pursuant to Fed. R. Civ. P. 23, and appoint Plaintiff as class representative and undersigned counsel as class counsel;

B. Award Plaintiff and Class Members actual and statutory damages, punitive damages, and monetary damages to the maximum extent allowable;

C. Award declaratory and injunctive relief as permitted by law or equity to assure that Class Members have an effective remedy, including enjoining Defendant from continuing the unlawful practices as set forth above;

D. Award Plaintiff and Class Members pre-judgment and post-judgment interest to the maximum extent allowable;

E. Award Plaintiff and Class Members reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Award Plaintiff and Class Members such other favorable relief as allowable under law or at equity.



**COTCHETT, PITRE & McCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully demands a trial by jury for all claims so triable.

Dated: March 19, 2026

Respectfully submitted,

By: /s/ *Thomas E. Loeser*
Thomas E. Loeser (WSBA #38701)
By: /s/ *Karin B. Swope*
Karin B. Swope (WSBA #24015)
By: /s/ *Kelly Anna Koehnen Aristides*
Kelly Anna Koehnen Aristides (WSBA #64332)

**COTCHETT, PITRE & McCARTHY LLP**
Thomas E. Loeser (WSBA #38701)
Karin B. Swope (WSBA #24015)
Kelly Anna Koehnen Aristides (WSBA #64332)

1809 7th Avenue, Suite 1610
Seattle, WA 98101
T: (206) 802-1272
F: (206) 299-4184
tloeser@cpmlegal.com
kswope@cpmlegal.com
karistides@cpmlegal.com

*Counsel for Plaintiff Esteban Ibarra*